# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cordel Curley, | No. CV 09-0217-PHX-GMS (DKD) |
| Plaintiff, | **ORDER** |
| vs. | |
| Joseph Arpaio, | |
| Defendant. | |

Plaintiff Cordel Curley brought this civil rights action under 42 U.S.C. § 1983 against Joseph Arpaio, Maricopa County Sheriff (Doc. #13).[1] Before the Court is Defendant's Motion for Summary Judgment (Doc. #19), which is fully briefed (Doc. ##24, 26).

The Court will grant Defendant's motion and terminate the action.

## I. Complaint

Plaintiff's claim arose in December 2008-January 2009 when he was housed in the Lower Buckeye Jail in Phoenix, Arizona (Doc. #13 at 1, 3). In his First Amended Complaint, he alleged that Defendant directed that Christian music be played for over 10 hours a day at full volume (id. at 3). Plaintiff claimed that the Christian music was played with deliberate indifference to his Native American culture and faith in an apparent attempt to convert Plaintiff to Christianity or force him to celebrate Christmas (id.). He alleged that

---

[1] Upon screening the First Amended Complaint, the Court dismissed the Maricopa County Sheriff's Office (MCSO) and the Maricopa County Board of Supervisors as Defendants (Doc. #12).

Defendant's holiday music policy violated the Establishment Clause of the First Amendment and article II, section 12 of the Arizona Constitution (id.).

Defendant filed an Amended Answer (Doc. #14), and then submitted his Motion for Summary Judgment (Doc. #19).

**II.    Motion for Summary Judgment**

    **A.    Defendant's Contentions**

In support of his motion, Defendant submits a separate Statement of Facts (Doc. #20, DSOF), which is supported by the affidavit of John MacIntyre, Deputy Chief-Custody Bureau One for the MCSO (id., Ex. A, MacIntyre Aff. ¶¶ 1-2); and a list of the holiday songs played at the jail (id., Exs. B-C).

Defendant submits that in 2005, he determined that holiday music would be played in all of the county jails during the December-January holiday season in an effort to boost inmate morale and improve jail security during what can sometimes be a difficult time for inmates (id., DSOF ¶¶ 10-11). Defendant states that the music played during the 2008-2009 holiday season was multicultural and inclusive of many traditions (id. ¶ 13). The play list included Dr. Demento's Christmas album, with humorous holiday songs; Alvin and the Chipmunks; Elvis Presley, including "Blue Christmas"; Celtic chanting; traditional carols by the Mormon Tabernacle Choir; and a CD with titles such as "Feliz Navidad," "Ramadan," "Betelehui," "Over the Skies of Ysrael," and "A Christmas/Kwanzaa/Solstice/Chanukah/Ramadan/Boxing Day Song" (id. ¶ 14).

Defendant explains that at the Lower Buckeye Jail, all the holiday music CDs were formatted onto an MP3 (compressed audio file) so that the music could be played on a continuous loop and songs were repeated only after 5-7 different CDs had been played (id. ¶ 16). According to Defendant, the music was played from 7 a.m. to 5 p.m. at a low to moderate volume through the television sets encased in plexiglass in the day rooms; there was no music played in inmate cells (id. ¶¶ 17-19). Defendant maintains that if inmates wanted avoid listening to the music, they could remain in their cells, attend education

1 | programs or AA meetings where no music was played, or they could simply ignore it given the modest volume (id. ¶ 20).

Defendant asserts that the purpose for the holiday music was to remind inmates of the positive elements associated with the holiday season, reduce inmate tension, and thereby promote the safety of inmates and staff (Doc. #19 at 6). Defendant contends that this constitutes a legitimate secular purpose and thereby precludes a finding that the music was violative of the First Amendment (id. at 5-7). Defendant relies on cases in which courts have found that a city's display to celebrate the Christmas holiday and its origins, and a prison's Christmas party held in the visiting room for prisoners and their families to celebrate the holiday, did not violate the Establishment Clause (id. at 6, citing Lynch v. Donnelly, 465 U.S. 668, 671 (1984), and Torricellas v. Poole, 954 F. Supp. 1405, 1411-12 (C.D. Cal. 1997)). And Defendant submits that the mere fact that some of the music included traditional Christmas carols does not defeat the secular purpose behind the policy (id. at 7).

Defendant also argues that the broad range of secular holiday songs included on the play list at the jail demonstrates that his music policy did not have a principle effect that advances religion (id. at 7-8). He asserts that the "advancement" of any religion by the music was indirect, remote, or incidental and, thus, insufficient to violate the Establishment Clause (id. at 8).

Finally, Defendant maintains that the music policy was constitutional because there was no excessive entanglement with religion as evidenced by the variety of multicultural, novelty, secular, and humorous songs played at the Lower Buckeye Jail (id. at 8-9). Defendant adds that any expenditure of government funds to purchase and program the music was minimal (id. at 9).

**B.     Plaintiff's Response**[2]

Plaintiff submits a response memorandum (Doc. #24) and a separate Statement of Facts opposing Defendant's Motion (Doc. #25 (PSOF)).

---

[2]The Court issued a Notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), informing Plaintiff of his obligation to respond (Doc. #21).

Plaintiff argues that contrary to Defendant's unsupported contentions, the music did not reduce violence and confrontations at the jail; rather, most inmates resented the music and were demoralized by it (Doc. #24 at 3; Doc. #25, PSOF ¶ 3). Plaintiff asserts that the holiday music was played for an unreasonable amount of time at an inappropriate volume that overpowered conversations and prevented telephone communication with family and attorneys (Doc. #25, PSOF ¶¶ 4-5). Plaintiff also disputes that he could avoid listening to the music as suggested by Defendant; Plaintiff states that the location of the televisions, through which the music was played, and the excessive volume rendered it impossible to avoid (Doc. #24 at 4).

Plaintiff contends that Defendant's holiday music policy violated article II, section 12 of the Arizona Constitution, which provides that "[n]o public money or property shall be appropriated for or applied to any religious worship, exercise, or instruction, or to the support of any religious establishment" (id. at 2). Plaintiff further contends that the music violated the First Amendment because there were no secular elements accompanying the holiday music, such as displays with Santa Clause or reindeer (id. at 5-6). He therefore asserts that there was no legitimate secular purpose for the music (id. at 5). Plaintiff also argues that the amount and volume of the holiday music, which celebrated Christmas and the birthday of Christ, "most definitely advances [the] Christian faith" (id. at 6). He lists a variety of religious songs that he states were included in the holiday music (id. at 2). Finally, Plaintiff maintains that the music policy was entangled with Christianity (id. at 7).

### C. Defendant's Reply

In reply, Defendant asserts that Plaintiff has not presented a genuine issue of material fact as to whether the holiday music policy violated the Establishment Clause and that Defendant's motion demonstrates that the policy is constitutional (Doc. #26).

## III. Legal Standards

### A. Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). But Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. If the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

**B.    Establishment Clause**

The Establishment Clause of the First Amendment, which is applicable to the States, provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I; Lee v. Weisman, 505 U.S. 577, 580 (1992). Thus, the Establishment Clause bars governmental approval or disapproval of a particular religion or belief. Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 532 (1993). The basic test for Establishment Clause violations is set out in Lemon v. Kurtzman, 403 U.S. 602, 612-13, (1971), which requires that government actions (1) have a "secular legislative purpose," (2) not have a "principal or primary effect" that either "advances [or] inhibits religion," and (3) not foster "an excessive government entanglement" with religion. Inouye v. Kemna, 504 F.3d 705, 713 n. 7 (9th Cir. 2007).

**IV.    Analysis**

**A.    Lemon Test**

Under the first prong of the Lemon test, the Court must look at whether Defendant's music policy had a predominant purpose of advancing religion or whether it was neutral with respect to religion. McCreary County, Ky. v. ACLU, 545 U.S. 844, 860 (2005). This analysis focuses purely on the purpose for the policy; it "do[es] not question the propriety of the means to achieve that purpose or whether the defendants were correct or even reasonable in the assumptions underlying their actions." American Family Ass'n, Inc. v. City and County of San Francisco, 277 F.3d 1114, 1121 (9th Cir. 2002).

Here, Defendant presents a neutral, secular purpose for playing holiday music—to reduce inmate tension at a difficult time of year for inmates, and to promote safety in the jails. Although Plaintiff asserts that jail security was actually threatened as a result of the holiday music, he submits no evidence to show that the *purpose* of the policy was other than what Defendant proposed (Doc. #24 at 3). See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (conclusory allegations are insufficient to defeat summary judgment). It is of no moment whether the music policy was actually successful in reducing inmate tension, which Plaintiff disputes. American Family Ass'n., 277 F.3d at 1121.

When applying the second <u>Lemon</u> prong—whether the challenged practice has a principal or primary effect that advances or inhibits religious—the context of the challenged action must be considered. <u>Lynch</u>, 465 U.S. at 680. Despite some religious content, if the "primary" or "principal" effect of the action may be secular, the action does not violate the establishment clause. <u>Id.</u>; see <u>Florey v. Sioux Falls School Dist.</u>, 619 F.2d 1311, 1317 n. 5 (8th Cir.1980) (Christmas carols have non-religious cultural significance). Courts have recognized that Christmas is a holiday with strong secular elements, and the presence of secular elements in government action negates a religious endorsement See <u>County of Allegheny v. ACLU</u>, 492 U.S. 573, 596 (1989) (citations omitted).

The record reflects that the music played at the Lower Buckeye Jail included a number of non-religious titles and songs from various traditions (Doc. #20, Exs. B-C). Plaintiff asserts that the music was not secular and that it was faith based (Doc. #25, PSFO ¶ 4). At the same time, however, he admits that the songs played at the jail related to the holiday season, which—as stated—encompasses strong secular elements (Doc. #24 at 6). And Plaintiff's list of religious songs that he heard is not exhaustive (see <u>id.</u> at 2). Without more specific allegations, Plaintiff cannot demonstrate that the music did not include secular songs and songs from other traditions.

Plaintiff next asserts that the length of time that the music was played at the jail and the volume at which it was played represented a clear attempt to advance religion (Doc. #24 at 6). But Plaintiff also alleges that the music increased tensions at the jail and "demoralized the inmates" (Doc. #25 at 2), which suggests that the effect was actually negative toward religion. Nonetheless, as Defendant argues, some "advancement" of religion may result from government action, but a remote or incidental benefit is not enough to violate the Establishment Clause (Doc. #19 at 8, citing <u>Lynch</u>, 465 U.S. at 683). Thus, although Plaintiff's averments demonstrate that the holiday music was played in an annoying and impertinent manner, he has not shown that the music had a primary effect to advance religion.

1    Finally, with respect to the third Lemon prong, Plaintiff has not demonstrated that Defendant's holiday music policy fostered "an excessive government entanglement with religion." Lemon, 403 U.S. at 613. This case differs from Inouye v. Kemma, where the Ninth Circuit found coercion of religious activity because the plaintiff was required, as a condition of his parole, to attend a religion-based drug treatment program that involved "intensely religious events" and was "fundamentally based on a religious concept of a Higher Power." 504 F.3d at 713 (citations omitted).

In the instant action, there were no religious activities or prayer, and the secular music diluted any religious effect. See Allegheny, 492 U.S. at 596-97; Kreisner v. City of San Diego, 1 F.3d 775, 794 (9th Cir. 1993). Further, the special considerations of how children, as opposed to adults, were affected are not applicable here. See Lee, 505 U.S. at 592 (in ruling that clergy-led prayer at public high-school graduation was unconstitutional, Supreme Court stated that "there are heightened concerns with protecting freedom of conscience from subtle coercive pressure in elementary and secondary public schools"). Consequently, the holiday music did not amount to impermissible coercion or government entanglement with religion.

Based on the record in this case, the Court finds that Defendant's holiday music policy satisfies the Lemon test and, therefore, did not violate the Establishment Clause.

**B.    State Law Claim**

When federal law claims are eliminated before trial, the court generally should decline jurisdiction over state law claims and dismiss them without prejudice. Gini v. Las Vegas Metro. Police Dept., 40 F.3d 1041, 1046 (9th Cir. 1994). Accordingly, the Court will dismiss Plaintiff's claim alleging violation of article II, section 12 of the Arizona Constitution.

//
//
//
//
//

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion for Summary Judgment (Doc. #19).

(2) Defendant's Motion for Summary Judgment (Doc. #19) is **granted**; Plaintiff's First Amendment claim is dismissed with prejudice.

(3) Plaintiff's state-law claim is dismissed without prejudice.

DATED this 4th day of January, 2010.

*/s/ G. Murray Snow*
G. Murray Snow
United States District Judge